ST. PAUL, Justice.
 

 On June 11,. 1928, plaintiff acquired from James Nolan a certain 70 acres of land in Ouachita parish described as a tract of land lying partly in lot 1, section 28, and in the north half of section 40, township 20 north,
 
 *1055
 
 range
 
 4
 
 east; being the same property which James Nolan had acquired from H. H. Nolan on January 16, 1928, and being part of a larger tract (200 abres) which H. H. Nolan had acquired from J. B. Edwards on March 30, 1925.
 

 J. B. Edwards had acquired the whole of said larger (200 acres) tract from J. L. Cox on November 14, 1919, under the following description: “Lot Number one (1) of Section Twenty-eight (28) and all that part of Section Forty (40), known as McLaughlin Headright or confirmation, lying North of a line running'iñ a northeasterly and southwesterly direction dividing said McLaughlin Headright, or Confirmation, Section Forty, into two parts of equal widths, each containing two hundred acres, and all situated in Township Twenty North, Range Four East, and being the same property acquired by this vendor; by purchase from Arthur L. Smith on May 22nd, 1919 as per deed of record in Notarial Book No. 92, page 385.”
 

 I.
 

 On and before December 14, 1912, Arthur L. Smith, aforesaid, owned a certain plantation or tract of land in Ouachita parish consisting of 3091.2 acres as follows: “150 acres at the junction of Ouachita River and Bayou Bartholomew, in Township 20 North, Range 4 East; 360.21 acres in Sections 4 and 5 of Township 19 North, Range 4 East; and 2581.08 acres in Sections 20, 27, 28, 29, 30, 31, 32, 33, 37, 38, 39, 41,. 42, and 43 of Township 20 North, Range 4 East [none in Section 4Ó].”
 

 On December 14, 1912, Arthur L. Smith added to his tract of land, by purchase at sheriff’s sale from Mrs. Ella D. Helmick et al., 200 acres of land described as follows: “Lot No. One (1) Section Twenty-eight (28), and all that portion of Section Forty (40) known as the McLaughlin Headright or Confirmation lying North of line running in a Northeast and Southwest direction dividing said McLaughlin Headright or Confirmation, Section Forty (40), into two equal parts of equal width, containing two hundred (200) acres more or less, all in township twenty (20) north of range four (4) east, and being the same property acquired by said mortgagors from Miss Emily P. Cole and John T. Cole, Tutor, by authentic act to effect a partition, on January 19th, 1881, Book ‘X’, page 169 of the records of Ouachita Parish Louisiana.”
 

 IL
 

 On October 4, 1916, Arthur L. Smith executed an oil and gas lease to the Ouachita Natural Oas & Oil Company on his 3291.29 acres consisting of, “200 acres [being] Lot 1 see. 28 &
 
 y2
 
 of Sec. 40 lying N. of line running in a N. E. direction [no range or township given]; 360.21 acres in Sections 4 and 5, township 19 North, Range 4 East; 2581.08 acres in Sections 20, 27, 28, 29, 30, 31, 32, 33, 37, 38, 39, 41, 42, and 43 of township
 
 26
 
 North, Range 4 East; and 150 acres at the junction of Ouachita River and Bayou Bartholomew (in Township 20 North, Range 4 East).”
 

 Which lease provided that “if any of the above land is mis-described or any part left out same shall be corrected by either party without further consideration.”
 

 And also provided that the lessor, “by furnishing his own pipe and connections,
 
 *1057
 
 shall have sufficient gas free of cost for use in houses on the premises.”
 

 III.
 

 When A. L. Smith sold to J. L. Cox the 200 acres in section 40 of township 20 north, range 4 east, the deed contained a reservation as follows: “It is expressly stipulated and understood as a part of this conveyance that the said Arthur L. Smith, for himself, his heirs and assigns, reserves all of the oil, gas, sulphur, ore and other minerals of every nature and kind .within and under the said land, with complete and exclusive development privileges and ¡rights of ingress and egress for teams and vehicles, including rail and tram roads; and this reservation and ownership of said minerals, including the right of developing and exploiting the said lands for any and all the said minerals, is to vest in the said vendor, his successors, heirs and assigns, in perpetuity, the intention being to sell the surface rights only and reserving in full,' unconditional and unequivocal ownership all of the minerals of whatsoever kind and character and the exclusive right of.mining and exploiting same.”
 

 But there seems to have arisen some doubt concerning the above reservation, as • to whether Smith’s assigns acquired the property of the gas pipes on the premises sold and the right to use the gas in the houses on said premises; and accordingly, on January 5, 1928, whilst H. H. Nolan was still the owner of the whole 200 acres sold by Smith to Cox, and before he sold 70 acres thereof to James Nolan (January 16, 1928), who afterwards sold the same to White, the plaintiff (June 11, 1928), said H. H. Nolan and the heirs of A. L. Smith entered into an agreement wherein it was recited that Smith had executed the aforementioned oil and gas lease to the Ouachita Natural Gas & Oil Company and 'recognized that, notwithstanding; the reservation in the deed from Smith to Cox, nevertheless it was the true intention of said Smith to assign to his vendee in said deed the right, in so far as the lands conveyed were concerned, to use .gas in the houses on said property free of charge, as provided for in. said original lease contract, and was likewise his intention to convey unto said vendee and his assigns all pipe lines then constructed on the lands conveyed for the .purpose of delivering gas to the houses on the property conveyed. And accordingly: “In consideration of the premises, the amount received by the said A. L. Smith in the deed to Cox aforesaid, and in order to evidence the true intention of the said A. L. Smith and his vendee, Joseph L. Cox, the said appearers do hereby assign and deliver, with full subrogation to all of their rights therein, unto the said H. H. Nolan, his heirs and assigns, all pipe lines on the lands hereinabove described, and the right to take, receive and use free of cost in the houses on the land acquired by the said H. H. Nolan, gas produced from any and all of the land included in the lease from A. L. Smith to Ouachita Natural Gas Company, Inc., dated October 4th 1916, and recorded in Conveyance Book 81, page 1033 Of the records of Ouachita Parish, Louisiana.”
 

 This agreement, though executed whilst H. H. Nolan was the owner of the 200 acres and before he sold 70 acres thereof to James
 
 *1059
 
 Nolan who afterwards sold to 'White, was not recorded until June 11, 1929; that is to say, until after H. H. Nolan had sold to James Nolan and James Nolan had sold to White.
 

 IV.
 

 This is an action for slander of title. Plaintiff claims the defendants are slandering his title by claiming an oil and gas lease thereon. Defendants claim that the oil and gas lease executed on October 4, 1916, by Arthur L. Smith to the Ouachita Natural Gas & Oil Company covers plaintiff’s land and is still a valid and subsisting lease.
 

 The only
 
 questions
 
 involved are: (1) The sufficiency of the description in the oil and gas lease; and (2) whether said lease has been lost by the prescription of 10 years for nonuser.
 

 V.
 

 We think the description was sufficient. “It suffices if the description be ‘such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary.’ ” Tircuit v. Burton Swartz Cypress Co., 162 La. 319, 110 So. 489, 492.
 

 Therefore, whilst an
 
 unrecorded
 
 deed can have no effect whatever as to third persons, the same is not true where the deed is recorded but contains only an inaccurate or faulty description of the property but not so inaccurate or faulty as to be actually misleading. Hence when the only description in a mortgage was “one large property or tract at the corner of Orleans and Bourbon Streets” without any other boundaries given, this was held sufficient to put a purchaser on his guard. Roberts v. Bauer, 35 La. Ann. 453, citing City Bank v. Denham, 7 Rob. 39, and Ells v. Sims, 2 La. Ann. 253. See, also, Lee v. Long, 166 La. 1084, 118 So. 320.
 

 Of course where the description in the recorded deed is so
 
 misleading
 
 that it actually describes accurately some other property than that mortgaged or sold, a purchaser is net only not put on ■ his guard thereby, but is actually put off his guard, and in such case a resort to outside evidence would have the effect not merely of making the description certain, but of actually changing the record; and this cannot be allowed. Ducre v. Milner, 165 La. 433, 115 So. 646; Sentell v. Randolph, 52 La. Ann. 52, 26 So. 797; Haas v. Fontenot, 132 La. 812, 61 So. 831; Roussel v. Railways Realty Co., 132 La. 379, 61 So. 409, 833; Williams v. Raymond, 163 La. 764, 112 So. 713.
 

 In the present case it is shown that Smith, the lessor, had only 3,291.29 acres of land in the whole parish of Ouachita. His title to the 200-acre tract, forming part of the 3,291.29 acres which he owned, was of record, and it is patent on the face of the papers that he intended to lease all his holdings, since it is declared that the land leased contains 3291.29 acres, and “if any of the above land is mis-deseribed or any part left out same shall be corrected by either party without further consideration.” All of which was sufficient to put any pur
 
 *1061
 
 chaser on guard that the 200-acre tract was included in the lease, even though the description was lacking in accuracy of detail. In our opinion the description was sufficient, and could have misled no one.
 

 VI.
 

 As the Ouachita Natural Gas & Oil Company did no drilling under its lease of October 4, 1916, on the particular land herein involved within ten years before the filing of this suit, plaintiff claims thpt the lease was forfeited for nonuser of ten years. But the agreement between H. H. Nolan, then owner of the land, and the heirs of A. L. Smith, and the continual use by Smith and his assigns of the gas produced from other wells on the leased land, was a constant interruption of the prescription; and indeed Nolan actually stipulated for and accepted the benefits of the lease. This was therefore as full and complete an acknowledgment of the lease as could be wished for; and, being in writing, would have been sufficient to take the lease out of prescription, even if prescription had already run.
 

 But in fact no prescription had run when Nolan made said acknowledgment, because on May 26, 1919, which was within three years after the original lease and within ten years before Nolan made said acknowledgment, Arthur L. Smith had himself acknowledged said lease in writing and stipulated for additional compensation thereunder. Tr. 201.
 

 Nor was it necessary to record the evidence of such interruption. Baird v. Atlas Oil Co., 146 La. 1091, 84 So. 366; Busch-Everett Co. v. Vivian Oil Co. et al., 128 La. 886, 55 So. 564. Cf. Gillis & Co. v. Nelson & Donalson, 16 La. Ann. 275.
 

 The trial judge thought that the case was with the defendants, and dismissed the plaintiff’s suit; and we think his judgment was correct.
 

 Decree.
 

 For the reasons assigned, the judgment appealed from is affirmed.